UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BENJAMEN HILL,

    Plaintiff,

v.

STATE OF MICHIGAN et al.,

    Defendants.

Case No. 22-10631
Honorable Laurie J. Michelson

**OPINION AND ORDER GRANTING PLAINTIFF'S APPLICATION TO PROCEED WITHOUT PREPAYMENT OF THE FILING FEE [5], SUMMARILY DISMISSING COMPLAINT [11], AND DENYING MOTIONS, LETTERS, & REQUESTS AS MOOT [7–10, 12]**

Benjamen Hill,[1] who is currently confined at the Lenawee County Jail awaiting trial, sued the state of Michigan, Wal-Mart, Inc., and almost two dozen individuals under 42 U.S.C. § 1983, two federal antidiscrimination statutes, and various other laws. (*See generally* ECF Nos. 1, 11.) He seeks immediate release from jail, the removal of the state-court judge and state-appointed attorney in his underlying criminal case, and roughly $22 million in damages. (*Id.*)

Since filing his complaint in March 2022, Hill has filed an application to proceed without prepaying costs, an amended complaint, two motions, two letters, and a "request." (ECF Nos. 5, 7–12.) Even piecing all of these filings together, it is

---

[1] Plaintiff spells his name "Benjamen Hill" in this case, but his name is listed as "Benjamin Dean Hill" in the state-court records he provided. (*See, e.g.*, ECF No. 8, PageID.30.) This appears to be the second case Hill has brought under 42 U.S.C. § 1915. *See Hill v. Vill. of Hamler*, No. 3:18-CV-2726, 2019 WL 4813002 (N.D. Ohio Sept. 30, 2019) (dismissed at screening stage).

not always clear what claims Hill asserts against which Defendants. Undertaking its best efforts, the Court identified five main claims: (1) that Hill's constitutional rights have been violated in his ongoing state-court criminal case; (2) that a correctional officer at the jail used excessive force against Hill; (3) that an officer retaliated against Hill after Hill filed grievances against him; (4) that the jail discriminated against Hill in his employment; and (5) that Walmart, Inc. and its employees denied Hill his right to contract and to access a public accommodation. Because there is very little overlap between the factual bases of these claims, the Court will outline the factual allegations where relevant.

For the reasons that follow, the Court will GRANT Hill's application to proceed without prepaying costs (ECF No. 5) and DISMISS his claims for failure to state a claim (ECF No. 11). The Court will then DENY his other pending motions, letters, and requests. (ECF Nos. 7–10, 12.)

## I. Application to Proceed Without Prepaying Costs

Start with Hill's application to proceed without prepayment of fees or costs. (ECF No. 5.) Under 28 U.S.C. § 1915(a)(1), the Court may authorize commencement of an action without prepayment of fees and costs if the plaintiff demonstrates that he cannot pay such fees. Hill is incarcerated, unemployed, has limited funds in his prisoner account statement, and his minimal assets are offset by over $31,000 in debt. (ECF No. 5.) So the Court finds that Hill is entitled to proceed in forma pauperis and grants his application. *See* 28 U.S.C. § 1915(a)(1).

But when a Court grants an application under 28 U.S.C. § 1915, it has an additional responsibility: screen the complaint and decide whether it "is frivolous or malicious" or "fails to state a claim on which relief may be granted." *See* 28 U.S.C. § 1915(e)(2)(B); *see also McGore v. Wrigglesworth*, 114 F.3d 601, 608 (6th Cir. 1997).

In deciding whether a complaint states a claim upon which relief may be granted, the Court must determine whether it "contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Heinrich v. Waiting Angels Adoption Servs., Inc.*, 668 F.3d 393, 403 (6th Cir. 2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Detailed factual allegations are not required to survive a motion to dismiss, *HDC, LLC v. City of Ann Arbor*, 675 F.3d 608, 614 (6th Cir. 2012), but the complaint must "raise a right to relief above the speculative level," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). And although a pro se litigant's complaint is to be construed liberally, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), that leniency is "not boundless," *Martin v. Overton*, 391 F.3d 710, 714 (6th Cir. 2004). The "basic pleading requirements 'apply to self-represented and counseled plaintiffs alike.'" *Williams v. Hall*, No. 21-5540, 2022 WL 2966395, at *2 (6th Cir. July 27, 2022) (quoting *Harnage v. Lightner*, 916 F.3d 138, 141 (2d Cir. 2019)).

The Court has reviewed all of Hill's filings as support for his claims, including those labeled as letters or requests. Despite that broad review, the Court concludes that none of Hill's claims survive § 1915 screening.

## II. Threshold Deficiencies

The Court will begin by dismissing a number of claims that lack sufficient factual support.

### A. Defendants Without Factual Allegations

It is a basic pleading requirement that a plaintiff attribute factual allegations to particular defendants. *See Twombly*, 550 U.S. at 544 (holding that, in order to state a claim, a plaintiff must make sufficient allegations to give a defendant fair notice of the claim). Where a person is named as a defendant without an allegation of specific misconduct, the complaint is subject to dismissal, even under the liberal construction afforded to pro se complaints. *See Gilmore v. Corr. Corp. of Am.*, 92 F. App'x. 188, 190 (6th Cir. 2004) (dismissing pro se complaint where plaintiff failed to allege how any named defendant was involved in the violation of his rights); *Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (similar).

Hill named the following as defendants but failed to allege any facts showing how they violated his rights: the State of Michigan,[2] Kyle Echler, Jennifer Hern, Raymond Reyna, Nate Adams, Mike Counts, Mike Sprague, Juan Silva Cruise, Hezekiah Hall, Karen Mudbank, Sergeant Speilman (FNU), Jane Doe 1, John Doe 2, John Doe 3, Gary Ward, Jeremy Perry, Joe Leftwich, Linda Underwood, and CJS Charisma. And though Hill makes some factual allegations about Officers Westgate and Swandon specifically, those allegations fail to allege any wrongdoing and so

---

[2] The state of Michigan must also be dismissed because it is immune from § 1983 suits under the Eleventh Amendment. *See Harrison v. Michigan*, 722 F.3d 768, 771 (6th Cir. 2013).

4

they are insufficient to state a claim. (*See* ECF No. 1, PageID.3–5 (noting that Westgate and Swandon were correctional officers at Lenawee County Jail who escorted another inmate to Hill's cell before an altercation broke out between that inmate and a different officer).)

Accordingly, all of these Defendants will be dismissed. *See Hill v. Vill. of Hamler*, No. 3:18-CV-2726, 2019 WL 4813002, at *4 (N.D. Ohio Sept. 30, 2019) ("Merely listing names in the caption of the complaint and alleging constitutional violations in the body of the complaint is not enough[.]" (quoting *Gilmore v. Corr. Corp. of Am.*, 92 F. App'x 188, 190 (6th Cir. 2004))).

The only remaining Defendants are Salvatore Molaro, Sergeant Goll, Walmart, and Terrance. (It is not clear if Terrance is the Defendant's first or last name.)

### B. Claims Without Factual Allegations

Hill also makes a number of claims that have no supporting factual allegations. For instance, Hill's complaint and other filings allege that he was the victim of stalking, bribery, assault and battery, malicious prosecution, illegal search and seizure, excessive bail, false arrest, and entrapment, among other wrongs. (*See* ECF No. 1, PageID.1–2; ECF No. 9, PageID.38; ECF No. 12, PageID.58–59.)

But these claims are merely listed one after another, and Hill never identified facts to support these alleged violations of his rights. In other words, these claims are nothing more than "unadorned, the-defendant-unlawfully-harmed-me accusation[s]." *See Iqbal*, 556 U.S. at 678. So these claims will be dismissed. *See*

*Hill*, 2019 WL 4813002, at *5 ("Plaintiff's numerous generic allegations against unspecified defendants, deputies, and officers are insufficient to support a plausible . . . claim[.]").

### III. Remaining Claims

With those threshold deficiencies addressed, the Court turns to Hill's remaining claims. Specifically, he brings claims under § 1983 and two federal antidiscrimination statutes.

None survive § 1915 screening.

#### A. Constitutional Claims

Hill brings four claims under § 1983. "To state a claim under § 1983, a plaintiff must set forth facts that, when favorably construed, establish: (1) the deprivation of a right secured by the Constitution or laws of the United States; (2) caused by a person acting under the color of state law." *Baynes v. Cleland*, 799 F.3d 600, 607 (6th Cir. 2015). Hill has failed to do so.

**1. Claims Challenging Hill's State Criminal Proceeding**

Hill first claims that many of his constitutional rights were violated in his underlying state-court criminal proceeding. (*See* ECF No. 7, PageID.23; ECF No. 8, PageID.27; ECF No. 9, PageID.37, 41.) He argues that the judge and his state-appointed attorney, Salvatore Molaro, violated his Fifth Amendment right against self-incrimination and his Sixth Amendment rights to a speedy trial and to the effective assistance of counsel, among others. Accordingly, in at least five filings, Hill asks this Court to order or "persuade" Michigan's 39th Circuit Court to release him from pre-trial detention and to "remove" the state-court judge and Molaro. (*See*

6

ECF No. 7, PageID.23–24; ECF No. 8, PageID.27–28; ECF No. 9, PageID.36–37, 39–41; ECF No. 10, PageID.44, 46; ECF No. 12, PageID.57.)

This federal Court cannot provide the relief Hill seeks.[3]

To the extent Hill challenges the fact or duration of his confinement, he has but one remedy: an application for a writ of habeas corpus. *See Preiser v. Rodriguez*, 411 U.S. 475, 488–90 (1973) ("[W]hen a state prisoner is challenging the very fact or duration of his physical imprisonment, and the relief he seeks is a determination that he is entitled to immediate release or a speedier release from that imprisonment, his sole federal remedy is a writ of habeas corpus."); *Wershe v. Combs*, 763 F.3d 500, 504 (6th Cir. 2014). Hill is clearly aware of this potential remedy as he has filed three habeas petitions. *See Hill v. Bevier*, No. 2:21-CV-13056, 2022 WL 138646, at *1 (E.D. Mich. Jan. 14, 2022) ("Petitioner has already been denied pre-judgment habeas relief twice.").

And to the extent Hill asks this Court to otherwise interfere in the pending criminal case, it declines to do so. In *Younger v. Harris*, 401 U.S. 37, 41 (1971), the Supreme Court held that federal courts may not "stay or enjoin pending state court proceedings except under special circumstances." *See also O'Neill v. Coughlan*, 511 F.3d 638, 642 (6th Cir. 2008) (noting that *Younger* abstention may be raised by a court sua sponte). For this Court to abstain, "(1) there must be on-going state judicial proceedings; (2) those proceedings must implicate important state interests;

---

[3] The Court also notes that Molaro is not subject to suit under 42 U.S.C. § 1983 because he is not a state actor. *See Polk Cnty. v. Dodson*, 454 U.S. 312, 325 (1981) ("[A] public defender does not act under color of state law when performing a lawyer's traditional functions as counsel to a defendant in a criminal proceeding.").

7

and (3) there must be an adequate opportunity in the state proceedings to raise constitutional challenges." *Hill v. Snyder*, 878 F.3d 193, 206 (6th Cir. 2017) (quoting *Squire*, 469 F.3d at 555).

All three requirements for *Younger* abstention are met here. First, Hill's complaint and filings repeatedly refer to criminal proceedings that were already pending against him in state court when this action commenced. *See Hill*, 878 F.3d at 205. Second, a criminal prosecution is exactly the kind of state proceeding envisioned by *Younger*. *See Younger*, 401 U.S. at 43; *Leveye v. Metro. Pub. Def.'s Office*, 73 F. App'x 792, 794 (6th Cir. 2003) ("[S]tate criminal prosecutions have traditionally been considered an arena in which federal courts decline to interfere."). Third, Hill's state criminal proceedings provide an adequate opportunity to raise these constitutional challenges, and Hill failed to allege facts which indicate that he is unable to raise these constitutional claims in state court. *See Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 16 (1987); *Kelm v. Hyatt*, 44 F.3d 415, 421 (6th Cir. 1995) (holding that plaintiff must prove inadequacy of state-court procedures to warrant federal court intervention). So *Younger* abstention is warranted. And none of Hill's allegations suggest that an exception to *Younger* should apply. *See Doe v. Univ. of Kentucky*, 860 F.3d 365, 371 (6th Cir. 2017) (noting that *Younger* exceptions include "bad faith, harassment, or flagrant unconstitutionality of the statute or rule at issue").

Because Hill's constitutional challenges to his criminal case are most appropriately pursued in state court, this Court will not interfere with that

8

proceeding. And because the relief that Hill seeks is only equitable in nature, the Court will dismiss these claims without prejudice. *See Aaron v. O'Connor*, 914 F.3d 1010, 1020–21 (6th Cir. 2019); *Nimer v. Litchfield Twp. Bd. of Trs.*, 707 F.3d 699, 702 (6th Cir. 2013) (explaining when a court should stay or dismiss a case under *Younger*).

## 2. Excessive Force

Hill next claims that Defendant Goll, a sergeant at the Lenawee County Jail, "assaulted" him during an altercation between Goll and Hill's cellmate. (ECF No. 1, PageID.4–5; ECF No. 9, PageID.41.) According to Hill, his cellmate was "having a severe psychotic episode" and "threaten[ed]" both Hill and jail staff when Goll intervened. (ECF No. 1, PageID.4.) Hill claims that he was compliant with Goll's orders throughout the altercation, but—according to Hill—Goll "threw [his] shit at [him] and physically grabbed [him] and hit [him] in the neck and verbally threatened [him] multiple times." (ECF No. 1, PageID.4–5; ECF No. 9, PageID.41.) The filings do not suggest that Hill was injured in any way. (*See, e.g.*, ECF Nos. 1, 9.)

The Fourteenth Amendment's Due Process Clause protects pretrial detainees like Hill from the use of excessive force. *See Hale v. Boyle Cnty.*, 18 F.4th 845, 852 (6th Cir. 2021). "To prevail on an excessive force claim, a pretrial detainee must show 'that the force purposely or knowingly used against him was objectively unreasonable.'" *Cretacci v. Call*, 988 F.3d 860, 869 (6th Cir. 2021) (quoting *Kingsley v. Hendrickson*, 576 U.S. 389, 397 (2015)). But "there is, of course, a *de minimis*

9

level of [force] with which the Constitution is not concerned." *Bell v. Wolfish*, 441 U.S. 520, 539 (1979) (quoting *Ingraham v. Wright*, 430 U.S. 651, 674 (1977)). Accordingly, "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers," violates the Constitution. *Graham v. Connor*, 490 U.S. 386, 396 (1989). "That is, even where a suspect does not actively resist, the use of force must cross the *constitutional* line." *Hanson v. Madison Cnty. Det. Ctr.*, 736 F. App'x 521, 530 (6th Cir. 2018).

In addition to the level of force used, courts consider other factors to determine if such force was objectively unreasonable under the totality of the circumstances, including the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; the severity of the security problem at issue; and the threat reasonably perceived by the officer. *See Hanson*, 736 F. App'x at 530; *Hale v. Boyle Cnty.*, 18 F.4th 845, 852 (6th Cir. 2021). "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Hanson*, 736 F. App'x at 530 (quoting *Graham*, 490 U.S. at 396–97).

Hill alleges that Goll "grabbed" him and "hit" him once in the back of the neck. (*See* ECF Nos. 1, 9.) Goll may also have thrown something at Hill (but what it was and whether it struck Hill is unclear). That is insufficient to state a claim for excessive force. *See Hanson*, 736 F. App'x at 529 (finding no constitutional violation

10

where an officer shoved the plaintiff into a wall with minimal or no provocation); *Lee v. City of Norwalk*, 529 F. App'x. 778, 782–83 (6th Cir. 2013) (finding no constitutional violation where an officer "took hold of [the suspect's] sleeves . . . then applied force to her neck with his forearm" when she was resisting); *Leary v. Livingston Cnty.*, 528 F.3d 438, 443 (6th Cir. 2008) (finding no constitutional violation when a plaintiff's "single allegation of force—that [an officer] hit him '[i]n the back of the neck' with the side of his hand, performing 'a karate chop kind of deal'—was *de minimis*").

But even assuming the force Goll used was more than *de minimus*, Hill has not plausibly pled that it was objectively unreasonable under the circumstances. True, Hill says he was complying with Goll's orders. But the need for the force was great (at least as to the cellmate), as the cellmate's "psychotic" episode and threatening behavior likely posed a serious security threat. And as Hill failed to mention any injury, it does not appear that much force was used against him. *See DiBiase v. Lake Cnty. Det. Facility*, No. 1:12 CV 0944, 2012 WL 3061448, at *5 (N.D. Ohio July 26, 2012) (dismissing complaint at § 1915 screening stage where a pretrial detainee was handcuffed and compliant when "two officers then put there [sic] elbo[w]s into [his] back and forced [his] face into the wall"). So considering "the perspective of a reasonable officer on the scene" and the officer's need to "preserve internal order and discipline and to maintain institutional security," the Court cannot say that the force, as presently alleged, was objectively unreasonable. *See Kingsley v. Hendrickson*, 576 U.S. 389, 397 (2015).

11

So Hill's excessive force claim will be dismissed without prejudice. However, the Court will permit Hill to file an amended complaint related to this claim per the instructions below.

### 3. Retaliation

Hill also claims that Goll retaliated against him by issuing him "frivolous misconduct reports" after he used the jail's grievance process to complain about him. (ECF No. 9, PageID.42; ECF No. 8, PageID.32–34 (three disciplinary notices for minor misconduct from Goll between January and April 2022).)

A First Amendment retaliation claim has three elements: "(1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two—that is, the adverse action was motivated at least in part by the plaintiff's protected conduct." *Maben v. Thelen*, 887 F.3d 252, 264 (6th Cir. 2018) (quoting *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999)).

The Court assumes, without deciding, that Hill can establish the first two requirements. First, inmates like Hill have an "undisputed" First Amendment right to file grievances against prison officials. *See Maben*, 887 F.3d at 264. Though Hill fails to identify any specific grievances he filed against Goll, the Court will assume that he did and that such conduct was protected. Second, Hill's misconduct tickets resulted in the loss of tablet, phone, and television privileges for a few days at a time and warned of escalating punishment for future misconduct. (ECF No. 8,

PageID.32–34.) Again, the Court will assume that this would deter a person of ordinary firmness from continuing to file grievances. *See Maben*, 887 F.3d at 264 (finding that the "deprivation of privileges is hardly inconsequential" and that "the issuance of the minor misconduct ticket subjected [Plaintiff] to the risk of even more significant sanctions, including confinement to his cell" (internal quotation marks omitted)).

That leaves the third element. To establish causation, a plaintiff must allege the adverse action was "motivated at least in part" by the protected conduct. *Hill v. Lappin*, 630 F.3d 468, 475 (6th Cir. 2010) (citing *Siggers-El v. Barlow*, 412 F.3d 693, 699 (6th Cir. 2005)). "[C]onclusory allegations of retaliatory motive unsupported by material facts will not be sufficient to state a . . . claim." *Hill v. Lappin*, 630 F.3d 468, 475 (6th Cir. 2010). However, circumstantial evidence can suffice at this stage, including allegations of "the disparate treatment of similarly situated individuals or the temporal proximity between the prisoner's protected conduct and the official's adverse action." *Id.*

Hill failed to show that there was a causal connection between his grievances and the misconduct tickets. Besides conclusory allegations of Goll's retaliatory motive, Hill alleges no facts to suggest a causal connection between the grievances and the misconduct tickets. (ECF No. 9, PageID.42.) He points to no similarly situated individuals. And Hill did not provide any information about his grievances or when they were filed, so the Court cannot evaluate whether there might have been sufficient temporal proximity to suggest a retaliatory motive. Indeed, even if

13

the Court were to assume that Hill grieved the use-of-force incident addressed above, that would not support a finding of temporal proximity, as that incident occurred nine months prior to the first misconduct ticket. (*Compare* ECF No. 1, PageID.4 (noting that the incident with Hill's cellmate occurred on May 7, 2021), *with* ECF No. 8, PageID.32–24 (indicating that the misconduct tickets were issued between January and April 2022)); *see also Spearman v. Whitmer*, No. 21-1182, 2021 WL 7162075, at *2 (6th Cir. Nov. 10, 2021) (affirming dismissal of complaint at § 1915 screening stage where protected conduct and adverse action were 15 days apart and there was no additional circumstantial evidence of retaliatory motive).

Because Hill failed to plead any facts linking the misconduct tickets to the grievances, the retaliation claim will be dismissed.

### 4. Employment Discrimination

Hill also claims that, after he filled out an application to be a county trustee for food service, he was "denied a work detail while similarly situated inmates were given a work position." (ECF No. 9, PageID.42.) So, says Hill, he was "discriminated against" and denied "equal opportunity employment." (*Id.*) That is the full extent of the factual allegations related to this claim.

Hill fails to cite any federal statutes that give him a right to equal employment opportunity while in jail. *See also* EEOC Dec. No. 86-7, 40 Fair Empl. Prac. Cas. (BNA) 1892 (1986), available at 1986 WL 38836 (noting that inmates and correctional facilities lack the "employment relationship" necessary to state a Title VII claim). So the Court assumes that he is raising a constitutional claim. But "[i]t

14

is well established . . . that no prisoner has a constitutional right to a particular job or to any job." *See Ivey v. Wilson*, 832 F.2d 950, 955 (6th Cir. 1987); *see also Frantz v. Michigan Dep't of Corr.*, No. 1:11-CV-584, 2011 WL 3100564, at *7 (W.D. Mich. July 25, 2011) (collecting cases) ("Federal courts consistently have found that prisoners have no constitutionally protected liberty interest in prison employment . . . based on the Fourteenth Amendment."). So Hill does not have a constitutional right to a job while in jail.

But Hill does have a constitutional right to "the equal protection of the laws." U.S. Const., amend. XIV, § 1. The equal protection clause of the Fourteenth Amendment "embodies the principle that all persons similarly situated should be treated alike." *Koger v. Mohr*, 964 F.3d 532, 544 (6th Cir. 2020). So if, for example, Hill was denied employment in jail because of his race, he might be able to state an equal protection claim. *See, e.g.*, *Harris v. Greer*, 750 F.2d 617, 619 (7th Cir. 1984) (Posner, J.) ("A policy of deliberate racial segregation of prisoners would raise serious questions under the equal protection clause of the Fourteenth Amendment.").

However, "to establish an equal protection violation, a plaintiff must establish more than differential treatment alone—a discriminatory intent or purpose is required." *Maye v. Klee*, 915 F.3d 1076, 1085 (6th Cir. 2019) (citing *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 264–65 (1977)). Hill failed on all fronts. Not only does he fail to allege how he was treated differently, but he makes no allegations about discriminatory intent or purpose. Indeed, he does

15

not explain what protected class he belongs to or how the other inmates were similarly situated to him but treated more favorably. So the Court has no basis to infer any differential treatment, let alone that it resulted from a discriminatory intent or purpose. *See Merch. v. Hawk-Sawyer*, 37 F. App'x 143, 146 (6th Cir. 2002) (affirming dismissal of inmate's equal protection claim "because [he] has failed to allege that he is a member of a suspect class, or state how the person claimed to have been afforded favorable treatment was similarly situated to [him].").

Thus, this claim will be dismissed.

### B. Discrimination Claims

Hill's final claims argue that Wal-Mart and its employees, "CJS Charisma"[4] and Terrance, discriminated against him in violation of 42 U.S.C. § 1981 and Title II of the Civil Rights Act of 1964.[5] (ECF No. 9, PageID.38; ECF No. 10, PageID.49; ECF No. 11, PageID.53.)

Though this claim has the most supporting factual allegations, they are confusing. Hill claims that in March 2021, he was "escorted by the APD

---

[4] It is not at all clear who "CJS Charisma" is or how this person might have been involved in the incidents at Walmart. However, Hill attached a state-court document titled "Findings of Need for Protective Conditions," where a magistrate judge found that "the conditions appearing in the face of this bail bond are reasonably necessary for the protection of C.J.S Charisma." (ECF No. 10, PageID.51.)

[5] Hill also cites 42 U.S.C. § 1983 for this claim, but, again, that statute only applies to "a person acting under color of state law." *See West v. Atkins*, 487 U.S. 42, 48 (1988). Hill does not allege that any of these Defendants are state actors, and the Court does not see how they could be. *See, e.g., Hunt v. Walmart Store, Inc.*, No. 17-14095, 2020 WL 7294363, at *5 (E.D. Mich. Mar. 5, 2020) ("Plaintiff cannot show that any of the Walmart Defendants are 'state actors.'").

[presumably the Adrian Police Department] to [a] Walmart store[.]" (ECF No. 9, PageID.38.) And while there "a male subject . . . was observed stalking and harassing [him]." (*Id.*) The next day, Hill returned to the Walmart. (*Id.*) At that time, says Hill, a "young male subject . . . verbally approached [Hill and] yelled, 'they are on to you.'" (*Id.*) (It is unclear if either of these "male subject[s]" was Defendant Terrance.) Hill went to the customer service desk and told a Michigan State Police officer about this strange encounter. (*Id.* at PageID.39.) The officer assured Hill that he was safe. (*Id.*) Hill says he was later "denied his right to present this information" to the state court at his preliminary hearing. (*Id.*)

This is insufficient to state a discrimination claim under either statute.

### 1. 42 U.S.C. § 1981

Hill first claims that this conduct violated 42 U.S.C. § 1981. This statute "prohibits intentional race discrimination in the making and enforcing of contracts involving both public and private actors." *Amini v. Oberlin Coll.*, 440 F.3d 350, 358 (6th Cir. 2006) (citing *Christian v. Wal–Mart Stores, Inc.*, 252 F.3d 862, 867–68 (6th Cir. 2001)). In order to state a claim for racial discrimination under § 1981, "a plaintiff must plead and prove that (1) he belongs to an identifiable class of persons who are subject to discrimination based on their race; (2) the defendant intended to discriminate against him on the basis of race; and (3) the defendant's discriminatory conduct abridged a right enumerated in section 1981(a)." *Amini*, 440 F.3d at 358 (noting that § 1981(a) gives all persons the same right to "to make and enforce

17

contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws . . . as is enjoyed by white citizens.").

Hill fails on every front. Though Hill says he is a member of a protected class, he does not say if he is subject to discrimination based on race. *See El-Zabet v. Nissan N. Am., Inc.*, 211 F. App'x 460, 462 (6th Cir. 2006) ("Section 1981 prohibits only discrimination based on race."). And Hill provides no evidence that Walmart, CJS Charisma, or Terrance intentionally discriminated against him based on his race or that he was engaged in any of the activities identified in § 1981(a). *Cf. Christian*, 252 F.3d at 864 (reversing grant of judgment as a matter of law for Walmart when a Walmart employee accused a Black shopper of shoplifting and called the police on her, thereby preventing her from completing her purchase).

So Hill's § 1981 claim fails.

### 2. Title II

Hill also claims that these Defendants violated Title II of the Civil Rights Act of 1964, codified at 42 U.S.C. § 2000a *et seq.* (ECF No. 1, PageID.5, 8.) Title II provides: "All persons shall be entitled to the full and equal enjoyment of the goods, services, facilities, privileges, advantages and accommodations of any place of public accommodation . . . without discrimination or segregation on the ground of race[.]" To establish a prima facie case under Title II, Hill must show that he "(1) is a member of a protected class; (2) attempted to exercise the right to full benefits and enjoyment of a place of public accommodation; (3) was denied those benefits and enjoyment; and (4) was treated less favorably than similarly situated persons who

are not members of the protected class." *Goemaere v. Tiell*, No. 19-10839, 2020 WL 134095, at *3 (E.D. Mich. Jan. 13, 2020) (citing *Bormuth v. Dahlem Conservancy*, 837 F. Supp. 2d 667, 674 (E.D. Mich. 2011)).

Hill again fails on every front. As explained, though Hill says that he is a "member of a protected class," he never actually identifies the class. (*See* ECF No. 11, PageID.54.) The rest of his claims are entirely conclusory. For example, he says that he "does hereby state a prima facie case for commercial discrimination." (*Id.*) But he never says how he tried to exercise his right to the benefits and enjoyment of Walmart, never explains how he was denied such benefit or enjoyment by these Defendants, and never identifies any similarly situated persons who were treated better than him. (*Id.*) In other words, the complaint tells the Court nothing about how Hill's right to access a public accommodation was denied because of his membership in a protected class. *See Twombly*, 550 U.S. at 555 (providing that a plaintiff's complaint must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do").

So Hill's right-to-contract and public-accommodation claims will be dismissed.

## IV. Conclusion

For the foregoing reasons, the Court GRANTS Hill's application to proceed without prepaying costs (ECF No. 5) and DISMISSES all of his claims without prejudice (ECF No. 11). And the Court DENIES his other pending motions, letters,

and requests, as these filings ask this Court to interfere with the state-court proceedings. (ECF Nos. 7–10, 12.)

However, the Court will permit Hill to file an amended complaint against Defendant Goll only. The amended complaint may plead only the excessive-force claim, and it should address the deficiencies outlined above. If the amended complaint includes additional claims or defendants, it will be stricken. If Hill wishes to file an amended complaint, he must do so by November 7. The failure to file an amended complaint by that date will result in this case being dismissed.

SO ORDERED.

Dated: October 7, 2022

s/Laurie J. Michelson  
LAURIE J. MICHELSON  
UNITED STATES DISTRICT JUDGE